IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| LISA ANN PLATZ,<br><br>                Petitioner,<br><br>vs.<br><br>WARDEN, VALLEY STATE PRISON<br>FOR WOMEN,<br><br>                Respondent. | No. 2:07-cv-1882-JKS<br><br>MEMORANDUM DECISION |

## I.  BACKGROUND/PRIOR PROCEEDINGS

Lisa Ann Platz, a state prisoner appearing through counsel, filed an Amended Petition for

a Writ of Habeas Corpus under 28 U.S.C. § 2254.  Lisa was charged with first-degree murder and

first-degree felony murder.  One special circumstance also was alleged: murder in commission of

kidnapping.  *See* CAL. PENAL CODE § 190.2(a)(17)(B).  In 2003, Lisa was convicted of first-

degree felony murder by an El Dorado County Superior Court jury, who also found the special

circumstance to be true.   Lisa was subsequently sentenced to life in prison without the possibility

of parole.

On August 13, 2001, Lisa and her boyfriend, James Csucsai, took Lisa's 9-year-old

daughter Rebbeca at gunpoint in Washington state after a custody ruling ordered that Lisa have

no further contact with Rebbeca.  They then proceeded on a multiple-week trip evading police

through various states which ultimately culminated in a standoff in a South Lake Tahoe

campground.  Although the facts of what happened are unclear (but suggest that James, not Lisa,

committed the murder), Rebbeca's throat was slashed and she died during the standoff with

police.  James's throat and Lisa's wrists were also slashed, but both lived.  James later hanged himself in his jail cell before trial and also wrote what appears to be a death-bed confession in which he essentially admitted to killing Rebbeca.

In February 2006, the California Court of Appeal affirmed Lisa's sentence on direct appeal and, on June 14, 2006, the California Supreme Court denied her petition for review.  *See People v. Platz*, 39 Cal. Rptr. 3d 412 (Cal Ct. App. 2006), Docket No. 47 ("Direct Appeal Op."). She timely filed her petition to this Court on September 11, 2007, alleging both exhausted and unexhausted claims.  The following day, Lisa filed in the El Dorado County Superior Court a state-habeas petition asserting her unexhausted claims.  *See* Docket No. 8 at 4. On December 6, 2007, this Court granted Lisa's motion to hold her federal proceedings in abeyance pending exhaustion of the unexhausted claims.

In the state habeas petition, Lisa principally claimed ineffective assistance of counsel, arguing that her trial counsel was ineffective for: (1) failing to argue that Lisa withdrew from the kidnapping prior to Rebbeca's death, and (2) failing to call her to testify in her own defense.  The superior court appointed counsel, held an evidentiary hearing, and ultimately denied relief.  Lisa then filed a new habeas petition to the California Court of Appeal, which received formal briefing, held oral argument, and denied relief in an unpublished, reasoned decision.  *See In re Platz*, No. C060623, 2010 WL 5393840 (Cal. Ct. App. Dec. 29, 2010), Docket No. 41 ("Habeas Op.").  The California Supreme Court subsequently denied review on April 13, 2011.

Lisa, through counsel, filed the Amended Petition presently before this Court on December 1, 2011.  Respondent has answered and Lisa has replied.  Although the facts of this case are indeed troublesome, Lisa's petition largely presents arguments concerning why the state

court misapplied or misinterpreted state law, rulings which are beyond the purview of this Court on habeas review.  Moreover, her additional claims are without merit.

Thus, although this Court is moved by the tragic facts of this case, the fact remains that Lisa's kidnapping of her daughter at gunpoint and in violation of a custody order ultimately led to Rebbeca's death.  Nothing that Lisa's trial counsel allegedly failed to do alters that fact, nor would curing any of the trial court's errors lead to a different result.  Accordingly, this Court denies Lisa's Petition and also will not grant a Certificate of Appealability.

## II. GROUNDS/CLAIMS

In her 259-page Amended Petition, Lisa raises nine claims, including allegations that: (1) trial counsel provided ineffective counsel by failing to recognize and present a withdrawal defense to the felony-murder charge by arguing that Lisa withdrew from the kidnapping prior to Rebbeca's death; (2) trial counsel provided ineffective counsel by failing to call Lisa as a witness to testify in her own defense; (3) the trial court's rulings as to the application of Washington law violated due process and her right to present a complete defense; (4) the appellate court's decision was unconstitutional in determining that Rebbeca did not have the capacity to consent under California law; (5) trial counsel provided ineffective counsel in failing to argue viable defenses to kidnapping under Washington Law; (6) the admission of the pleading that charged Lisa with second-degree kidnapping violated Lisa's due process, trial by jury, and confrontation rights; (7) improper jury instructions and prosecutorial misconduct violated due process; (8) the trial court failed to correct constitutional error that occurred during voir dire questioning; and (9) the prosecutor's elicitation of false testimony which the defense was not allowed to impeach violated Lisa's rights to due process and confrontation.

III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding," §

2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that

contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that

are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives

at a different result.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1)

"refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the

relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where

holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it

cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"

*Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards on habeas review, this Court reviews the "last reasoned

decision" by the state court.  *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004)

(citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)).  Under the AEDPA, the state court's

findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear

4

and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340

(2003).

IV. DISCUSSION

1.    *Ineffective Assistance of Counsel Claims* (claims 1, 2, 5)

Lisa brings three separate ineffective assistance of counsel claims.  She argues in claim

one that her trial counsel was ineffective for failing to assert a viable withdrawal defense to the

felony-murder charge.  In claim two, she argues that trial counsel was ineffective for failing to

call Lisa to testify in her own defense during trial.  In claim five, she argues that counsel was

ineffective for failing to anticipate the court's interpretation of the kidnapping statute and prepare

viable defenses under Washington law.

A.    *Strickland Standard on Habeas Review*

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a

defendant must show both that his counsel's performance was deficient and that the deficient

performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one

in which "counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed by the Sixth Amendment."  *Id.*  The Supreme Court has explained that, if there is a

reasonable probability that the outcome might have been different as a result of a legal error, the

defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376,

1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at

393-95.  Thus, Lisa must show that defense counsel's representation was not within the range of

competence demanded of attorneys in criminal cases, and that there is a reasonable probability

5

that, but for counsel's ineffectiveness, the result would have been different.  *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs.  *See Strickland,* 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan,* 686 F.3d 758, 775 (9th Cir. 2012).

It is through this highly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d) standard.  *See Knowles,* 556 U.S. at 123 (citing *Yarborough v. Gentry,* 540 U.S. 1, 5-6 (2003)).

   B.    *Claim 1: Failure to assert a viable defense of withdrawal to the kidnapping charge.*

In her first claim, Lisa argues that trial counsel was ineffective for failing to argue that she had withdrawn from the kidnapping.  She claims that her attorney believed her defense of consent under California law was her strongest argument.  However, the trial court ruled that Washington law would govern concerning whether Rebbeca was kidnapped.  Under Washington law, consent cannot be given by one under sixteen years of age, and thus consent was not a viable

defense.  Lisa argues that once it was determined that consent was no longer a viable defense, counsel should have realized that she had a viable defense of withdrawal.  Similarly, she claims that trial counsel was ineffective for failing to call her to testify to the facts of her withdrawal, which she asserts show that she had made every reasonable attempt to withdraw from the kidnapping by trying to get Rebbeca to safety, but that James forcibly stopped her.

Under the general aider and abetter liability instructions, a successful withdrawal defense requires that the defendant must: (1) "notify everyone else he or she knows is involved in the commission of the crime that he or she is no longer participating," and (2) "do everything reasonably within his or her power to prevent the crime from being committed."  *See* Judicial Council of California Criminal Jury Instruction ("CALCRIM") No. 401.

On habeas review, the appellate court recognized that the withdrawal defense requires that withdrawal take place before the target crime is committed.  Habeas Op. at 23-24; *see* CALCRIM No. 401 ("The notification must be made early enough to prevent the commission of the crime.").  Here, the court reasoned that the target crime is the kidnapping in Washington and not the murder in California.  Habeas Op. at 24.  The court therefore determined that the question posed by Lisa's appeal was "whether one who participates in a kidnapping may thereafter withdraw from that ongoing crime for purposes of application of the felony murder rule."  *Id.* The court noted that authority outside California was split on this issue, citing two cases reaching opposite conclusions, and by implication found no California cases on point.  *Id.* (citing *Smith v. Dugger*, 840 F.2d 787, 792 (11th Cir. 1988); *People v. Brown*, 186 N.E.2d 321, 324 (Ill. 1962)).  The court ultimately concluded that it was not necessary to decide whether California would

recognize such a defense because, even if it did, the facts of Lisa's case did not support a

withdrawal defense.  *Id.* at 24-25.

Lisa testified that, while in Colorado, she tried to leave and take Rebbeca to a Sheriff's

office she had seen in a small town, but that when she was less than twenty feet away, James

caught up with her and forced her to stop.  *Id.* at 25.  She further testified that James, from this

point on, was always with her, usually with a gun, and although she tried her best to get away,

she was ultimately unsuccessful.  *Id.* at 26.  As the habeas court explained, however, "all she said

to James in Colorado was that they were leaving," and that "she never said she was taking

Rebbeca and turning herself in."  *Id.* at 27.  "[F]or all James was told, petitioner's actions in

Colorado were an attempt to continue the kidnapping without him."  *Id.*  Thus, the court

concluded there was never a communication to James that she was attempting to withdraw from

the kidnapping.  *Id.*  Indeed, she testified at the habeas hearing that her dispute with James in

Colorado was over his e-mail to his sister, which Lisa feared would alert police and jeopardize

the kidnapping.  Her stated goal was to hide out with Rebbeca and evade capture until she could

establish residency in a new state and seek a change of custody based on changed circumstances.

Moreover, as to the second requirement, the court stated that "while it is true petitioner

took *some* action to end the kidnapping when she tried to take Rebbeca to the Sheriff's

Department cabin, it is readily clear petitioner did not do everything reasonably within her power

to end the kidnapping."  Habeas Op. at 27.  Despite Lisa's claim that she "could not have done

more because James was always with them and always armed," the court explained:

> [I]t is undisputed the three were often in public places and around others, yet
> petitioner made no effort to alert anyone of the situation or obtain help in getting
> Rebbeca to safety.  At one point, the three were in a Reno public library together.

At another point, they were in a Safeway grocery store.  On some occasions, including the fatal night, they were in public campgrounds with other campers around.

On the night of the killing, petitioner made no attempt to get help from the police for herself or Rebbeca.  Even when petitioner discovered James had left his guns in the car, petitioner made no attempt to get help.  On the contrary, she assisted in James's effort to resist the efforts of the police to negotiate a peaceful resolution. She in fact refused to speak with the hostage negotiator altogether.

*Id.* at 27-28.

The habeas court further noted that in order to succeed on her ineffective assistance claim, Lisa had to establish both deficient performance and prejudice.  *Id.* at 28.  The court added that "[p]rejudice is shown where there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* (quoting *In re Avena*, 49 Cal. Rptr. 2d 413, 12 Cal. 4th 694, 721 (Cal. 1996)).  Accordingly, the court noted that in order to find prejudice, it had to "conclude that, but for counsel's error, there is a reasonable probability that the result of the trial would have been different."  *Id.*  The court added, "[i]n other words, there must be sufficient evidence to create a reasonable probability that [Lisa] would have prevailed on a withdrawal defense."  *Id.* at 28-29.  The court concluded:

We find petitioner failed to meet this burden.  This is without a doubt a tragic case.  However, it is a tragedy of petitioner's making.  When petitioner decided to take Rebbeca from her father and stepmother at gunpoint, this set in motion the chain of events that ultimately led to Rebbeca's death. . . . Kidnapping is a serious and dangerous felony, which no doubt explains why it has been included with the felony-murder rule.  Absent an effective withdrawal from the underlying offense, which we do not find here, petitioner was liable for any death that occurred in the course of the kidnapping.  Because petitioner had no viable withdrawal defense, her ineffective assistance claim necessarily fails.  Without a viable withdrawal defense, trial counsel's failure to assert it could not have been prejudiced.

9

*Id.* at 29.

The lengthy argument by Lisa's attorney (over 150 pages in her Amended Petition on this claim) does not overcome the fact that this court is bound by the California Court of Appeal's application of California state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). The state superior court and the appellate court on habeas review took briefing, heard evidence, and held oral argument on whether Lisa's testimony gave rise to a viable withdrawal defense. Both the superior and appellate courts reasonably determined that there was insufficient evidence to support the elements of withdrawal, and thus Lisa did not have a viable defense of withdrawal to kidnapping. The decision of the California Court of Appeal was not "contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1); and, its decision was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). Additionally, a state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 340. Lisa has not met this burden and fails to show a reasonable probability that, but for counsel's decision to present only a consent defense, the result would have been different. *See Strickland*, 466 U.S. at 694.

Moreover, Lisa's argument that the withdrawal defense necessarily would have been submitted to the jury is clearly wrong. Lisa argues that if the defense had been submitted to the jury, "[i]t is reasonably possible and probable that a juror could and would have had a reasonable doubt with respect to each element of the withdrawal defense." To submit an instruction to the jury, however, the trial court would first need to determine whether the facts established a

10

sufficient foundation for the defense.  *See, e.g.*, *United States v. Lee*, 704 F.3d 785, 792 (9th Cir.

2012) (finding no error where district court refused to provide a jury instruction on entrapment

after finding that defendant presented no evidence of inducement or lack of predisposition);

*United States v. Urena*, 659 F.3d 903, 906-07 (9th Cir. 2011) (affirming district court's refusal to

instruct jury on self-defense where district court determined that defendant failed to establish a

factual foundation to support the defense).  Because the appellate court reasonably determined

that there was insufficient evidence to support a consent defense, it follows that the trial court

would not have been required to submit the defense to the jury.  The appellate court's finding

that there was no reasonable probability that the presentation of a consent defense would have led

to a more favorable result is therefore proper.

Furthermore, since the court found that Lisa did not have a viable defense of withdrawal,

her counsel could not have been ineffective for failing to raise the defense because it would have

been futile.  *See Lockhart v. Fretwell*, 506 U.S. 364, 374 (1993) (O'Connor, J., concurring)

(failing to raise a meritless objection cannot constitute prejudice under a *Strickland* ineffective

assistance of counsel claim); *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (appellate counsel

does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d

1428, 1434-35 (9th Cir. 1989) (appellate counsel's failure to raise a weak issue did not constitute

ineffective counsel).  Thus, at the very minimum, she cannot show prejudice.  Accordingly, Lisa

is not eligible for habeas relief on her first claim.

     C.    *Claim 2: Failure to call Lisa to testify in her own defense.*

In her second claim, Lisa argues that her trial counsel was ineffective for failing to call

her to testify in her own defense.  She asserts that, although he intended to call her as a witness,

trial counsel waited until the last minute to simulate a direct examination with her, which was when he realized she was unfit to testify.  She argues that this delay and failure to properly prepare her fell below the standard of care required and that, had she testified, her testimony would have strongly supported her consent defense and directly refuted the prosecution's lead theory that she killed Rebbeca.

The habeas court noted that counsel "intended all along that petitioner would testify," and that "[n]ear the end of trial, defense counsel and an assistant met with [Lisa] to prepare her testimony."  Habeas Op. at 30.  However, "they found her 'an absolute emotional basket case' and were unable to calm her down enough to prepare her to testify."  *Id.*  Counsel advised Lisa not to testify and, after the court rejected the consent defense, did not seek additional time to prepare her to testify.  *Id.*

Lisa argued to the habeas court, as she does to this Court, that "if she had testified, one or more jurors would not have returned a true finding on the special circumstance allegations."  *Id.* at 31 (internal quotation marks omitted).  The court noted that her argument therefore was (and still is) that, had she testified, "one or more of the jurors would have had a reasonable doubt that she acted with reckless indifference."  *Id.*

In rejecting this claim, the habeas court noted that defense counsel "testified at the habeas corpus proceeding that he did not begin preparing petitioner earlier because he had been working 12- and 14- hour days on the case, attending trial during the day and preparing writs and interviewing other witnesses in the evening."  *Id.* at 31.  The court pointed out that counsel thought Lisa "was an intelligent person," that "they had already spent a lot of time together," and that he therefore "assumed they would only need to go over a few things in preparation."  *Id.*

12

The court explained that trial counsel "further testified he did not prepare [Lisa] several days in advance, as was his custom, because he 'thought she was smart, very smart, and could handle this.'" *Id.* at 31-32.  The court therefore concluded that "it is readily clear counsel's failure to prepare petitioner earlier was not a matter of neglect so much as a tactical decision to concentrate on more pressing matters in the case." *Id.* at 32.

The court also stated that "[j]udicial scrutiny of counsel's performance must be highly deferential," that "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and [that] it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.*  The court explained:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* (citing *Strickland*, 466 U.S. at 689).

The court stated that Lisa's "argument assumes that if counsel had taken additional steps to prepare her to testify, had sought a continuance, or had made more use of the marriage, family and child counselor, she would have been able to testify effectively." *Id.* at 32-33.  The court noted, however, that nothing in the record supported her contention, and the fact that "she was able to testify at the hearing on her habeas corpus petition, many years after the event and many years after sitting through a trial in which the events of the murder were described in excruciating detail, has little or no bearing on that issue." *Id.* at 33.  Accordingly, the court ultimately

concluded that Lisa had "failed to overcome the presumption that trial counsel's decision not to call her as a witness fell below the range of reasonable professional assistance." *Id.*

The habeas court reasonably concluded that nothing in the record suggested that Lisa would have been emotionally able to testify in her own defense.  Given that the court applied *Strickland* in its analysis of this claim, which is the federal standard for ineffective assistance of counsel, and considering that the standard for this Court's purposes is highly deferential, the court's decision rejecting her second claim was not contrary to Supreme Court precedent nor was it "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *See* 28 U.S.C. § 2254(d); *see also Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1244-45 (9th Cir. 2005) (on federal habeas review, affirming state court's determination that decision to submit psychiatric report rather than have psychiatrist testify did not establish ineffective assistance of counsel under *Strickland*).

Moreover, this Court is bound by the state court's findings of fact unless Lisa rebuts them by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 340. Lisa's bald assertion that her testimony would have caused at least one juror to have reasonable doubt as to the special circumstance is insufficient to establish a reasonable probability that her testimony would have led to a more favorable result.  *See, e.g.*, *Gulbrandson v. Ryan*, 711 F.3d 1026, 1038-39 (9th Cir. 2013).  Lisa is therefore not eligible for relief on her second claim either.

> D.     *Claim 5: Failure to assert viable defenses to the kidnapping charge under Washington law.*

Lisa likewise argues in claim five that the jury may have acquitted her if counsel would have raised a reasonable doubt as to the second degree kidnapping charge.  Under Washington

14

law, "'abduct' means to restrain a person by either (a) secreting or holding him or her in a place where he or she is not likely to be found, or (b) using or threatening to use deadly force." WASH. REV. CODE ANN. § 9A.40.010.  Before the appellate court on direct appeal, "Lisa assert[ed] that if trial counsel had argued either that she had not restrained Rebbeca, as restraint is defined under Washington law, or that she and James had used force against [the stepmother], not Rebbeca, there is a reasonable probability that one or more jurors would have had a reasonable doubt with regard to one or more of the elements of second degree kidnapping under Washington law."[1] Direct Appeal Op. at 29.  She argued that Rebbeca could not have been restrained under the meaning of the Washington statute because Rebbeca was found in a public campground and James continued to openly email family members throughout the ordeal.  *Id.* at 29-30.

The appellate court rejected that argument, finding "those inferences . . . unreasonable given the undisputed facts that Rebbeca was taken at gunpoint, neither James nor Lisa told family members where they were, and the group moved frequently across several states over a five-week period."  *Id.* at 30.  The appellate court further stated, "Nor could defense counsel have made any

---

[1]     WASH. REV. CODE ANN. § 9A.40.030 provides in relevant part:

(1)     A person is guilty of kidnapping in the second degree if he or she intentionally abducts another person under circumstances not amounting to kidnapping in the first degree.

(2)     In any prosecution for kidnapping in the second degree, it is a defense if established by the defendant by a preponderance of the evidence that (a) the abduction does not include the use of or intent to use or threat to use deadly force, and (b) the actor is a relative of the person abducted, and (c) the actor's sole intent is to assume custody of that person.  Nothing contained in this paragraph shall constitute a defense to a prosecution for, or preclude a conviction of, any other crime.

(3)(a)  . . . [K]idnapping in the second degree is a class B felony.

more of his argument that Lisa had not taken Rebbeca by force." *Id.*  Ultimately, the appellate

court concluded:

> Because trial counsel did argue Lisa's de minimis role in exerting any force, we reject
> Lisa's contention that her lawyer's failure to expressly put these arguments in the context
> of the Washington statutes gives rise to a reasonable probability that one or more jurors,
> as a result, would have had a reasonable doubt that Lisa had abducted her daughter.

*Id.*

The record indicates that trial counsel persistently argued that Lisa did not use force or try

to restrain Rebbeca.  Moreover, Lisa does not demonstrate that the result would have been

different if counsel had made those arguments in the context of the Washington statutes.

Accordingly, Lisa is not entitled to relief on this claim.  *See Wood v. Ryan*, 693 F.3d 1104, 1119

(9th Cir. 2012) (no ineffective assistance where counsel argued underlying elements of

impulsivity defense and defendant did not demonstrate that a different or more comprehensive

presentation of that defense would have resulted in a different verdict, especially in light of the

overwhelming evidence of premeditation).

2.    *Claims Alleging Unreasonable State Court Determinations* (claims 3, 4)

Lisa additionally asserts two claims that challenge the reasonableness of the state courts'

determinations as to the governing law.

A.    *Claim 3: Trial court's interpretation of California's kidnapping statute violated
      due process under Bouie v. City of Columbia and Lisa's right to present a
      complete defense.*

In her third claim, Lisa argues that the trial court's interpretation of the California

kidnapping statute violated her right to due process and her right to present a complete defense.

Specifically, she contends that the court's determination that Washington Law applied

16

concerning the requisite force necessary for kidnapping under California Penal Code § 207(d)[2]

was novel, unforeseeable, and could not have been anticipated, and that the ruling therefore

deprived her of fair and adequate notice to the charges in violation of her right to due process

under *Bouie v. City of Columbia*, 378 U.S. 347 (1964).[3]  She also claims that because

Washington law did not permit her to defend the felony-murder charge by claiming consent, the

trial court's ruling additionally violated her right to present a complete defense and left the jury

with nothing to decide on the felony-murder charge.  Lisa further claims that even if Washington

law applied concerning whether the initial taking in Washington was lawful, her actions in

California should have been governed by California law, and thus the consent defense

nonetheless would be viable at the time of Rebbeca's death.

    As the appellate court noted on direct review, "[Lisa's] only defense to felony murder was

consent and thus, on appeal, the issue has enormous implications.  We must carefully deconstruct

her legal challenge to the kidnapping conviction."  Direct Appeal Op. at 17.

    Noting that the trial court interpreted Section 207(d) to mean that Washington law

governed the requisite force, the appellate court explained that the defense instruction on consent

was rejected because, under Washington law, a child under the age of 16 cannot consent or

---

[2]    "Every person who, being out of this state, *abducts or takes by force or fraud any person contrary to the law of the place where that act is committed,* and brings, sends, or conveys that person within the limits of this state, and is afterwards found within the limits thereof, is guilty of kidnapping."  CAL. PENAL CODE § 207(d) (emphasis added).

[3]    Lisa's argument appears to be that the combination of the trial court's rulings, including the jury instructions and the interpretation of the kidnapping statute and felony-murder rule, were novel and unforeseeable, and thus under *Bouie*, her due process rights were violated when she was found guilty of violating California Penal Code § 207(d) under a theory that relied solely on Washington law.

17

acquiesce to a taking.  *Id.* at 17.  On review, Lisa argued that "the plain meaning of the statute is

that the taking has to be 'contrary to the law of the place' where it occurs, but the determination

as to whether the taking was 'by force' is determined under California law, not the law of the

state where the taking occurred."  *Id.* at 18.

> In rejecting Lisa's argument, the court explained:
>
> Lisa parses the words of the statute in a strained attempt to rescue her so-called
> California consent defense, unavailable under the law of Washington.  Lisa
> concedes on appeal, as she did at trial, that the taking violated the law of
> Washington, but she maintains it was not "by force" as that term is applied in
> California.  Try as we might to apply all the rules of interpretation in Lisa's favor,
> we cannot accept her distorted interpretation of the plain meaning of the statute.

*Id.* at 18-19 (footnote omitted).

The court further stated that the "act described in the last phrase refers to the forceful or

fraudulent abduction or taking defined by the law of the place where the act is committed," and

that "[w]e can discern no ambiguity in this straightforward statement."  *Id.* at 19.

The court also rejected Lisa's argument that the consent defense became viable by the

time she brought the child into California.  *Id.* at 23-24.  The court explained that while some

California-state cases have found that a "forcible taking ends [when] the victim later voluntarily

and willingly consents to accompany the initial abductors, we cannot say that any facts presented

here would give rise to the type of knowing consent unavailable at the time of the taking."  *Id.* at

24.  The court reasoned:

> After all, Lisa and James transported a nine-year-old child across state lines armed
> with an arsenal of knives and guns.  They were on the run, attempting to evade
> capture for over five weeks.  A young child in these circumstances has no capacity
> to consent to a kidnapping, no matter how much she loves her mother or how little
> she fears being shot, stabbed, or slashed. There are simply no facts to suggest a

material change in circumstances from the time of her forcible taking that would give rise to a consent defense up until the moment the child was killed in the tent.

*Id.*

The court additionally rejected Lisa's argument that "the voters did not intend that kidnapping would be defined by the law of other jurisdictions when they voted to make kidnapping a basis for a first degree felony-murder conviction and made kidnap felony murder a basis for imposing the death penalty." *Id.* The court noted that "[w]hile the organization of section 207 may have changed, the substance of the kidnapping statute as it relates to out-of-state kidnapping has not," and that, "[a]t the time the voters added kidnapping as a basis for felony murder and a special circumstance, California kidnapping law included the clause that an out-of-state-taking becomes a California kidnapping if the perpetrator 'abducts or takes by force or fraud any person contrary to the law of the place where the act is committed' and later enters California." *Id.* at 25. The court concluded:

> The language would have been as plain to the voters as it was to the legislators. We find nothing repugnant about the notion that California has incorporated the law of the jurisdiction in which a person is taken or abducted into California's definition of kidnapping. We are not at liberty to alter the plain meaning of the language of the statute adopted by voters any more than we can ignore or override the plain meaning of a statute enacted by the Legislature.

*Id.* at 25-26.

The court further rejected Lisa's argument that the "trial court erroneously 'elongated' the crime of kidnapping, thereby virtually assuring her conviction of felony murder and the kidnapping special circumstance." *Id.* at 26. The trial court instructed the jury:

> For the purposes of determining whether an unlawful killing has occurred during the commission of a kidnapping, the commission of the crime of kidnapping is not confined to a fixed place or for a limited period of time.

19

A kidnapping is in progress after the original abduction while the perpetrator is fleeing in an attempt to escape.  Likewise, it is still in progress so long as pursuers are attempting to capture the perpetrator and/or obtain the release of the person abducted.

A kidnapping has ended when the person who was abducted has been freed from confinement and/or restraint and has reached a place of safety.

*Id.*

Lisa argued before the appellate court that "a kidnapping ends when the forcible aspect of the detention ends and the victim is no longer being transported against her will," and that the instruction "given by the trial court . . . invented a new crime by allowing the jury to find that the killing occurred during the commission of the kidnapping even if it took place weeks later, in a far distant location, and long after the cessation of force." *Id.*  The court rejected this argument, noting that it was "nothing more than an elongation of her earlier claims," and that it failed "because it is based on the erroneous premise that Rebbeca had the legal capacity to consent to the Washington kidnapping at some point before or after crossing into California but before she was murdered." *Id.* at 27.  The court concluded that the "instruction properly informed the jury that kidnapping continues until the victim is freed and has reached a place of safety," and that "Rebbeca . . . never reached such a refuge." *Id.*

Lisa essentially makes the same arguments to this Court in claim three of her Amended Petition that she made on direct appeal to the California Court of Appeal, now largely asserting that the appellate court misinterpreted and misapplied California state law.  To the extent that Lisa raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).

20

It is a fundamental precept of dual federalism that the states possess primary authority for

defining and enforcing the criminal law.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)

(a federal habeas court cannot reexamine a state court's interpretation and application of state

law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and

correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

A "state court's interpretation of state law, including one announced on direct appeal of the

challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw,* 546 U.S. at 76;

*Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting that a state appellate court's

determination of state law is binding and must be given deference).  Thus, because most of her

claims raise only state law issues that are beyond the purview of this Court on habeas review, we

are bound by the state court's interpretation of state law and findings of fact and thus Lisa cannot

prevail on those claims.

Lisa does, however, additionally raise two federal issues.  First, Lisa argues that the trial

court violated her due process rights established under *Bouie v. City of Columbia*, 378 U.S. 347

(1964), because its rulings were novel and unforeseeable, as discussed *supra*, and deprived her of

"fair and adequate notice of the charges against her and her right to defend against those

charges."  In *Bouie*, the Supreme Court overturned the conviction of two black students who,

after being asked to leave, were arrested for sitting at a lunch counter in Columbia, South

Carolina.  378 U.S. at 348-49.  Both men were charged and convicted with criminal trespass in

violation of § 16-386 of the South Carolina Code of 1952.  *Id*. at 349.  The South Carolina

Supreme Court affirmed the convictions over their due process and equal protection challenges,

interpreting the trespass statute to prohibit both "entry upon the lands of another after notice from

the owner prohibiting such entry" and "remaining on the premises after being asked to leave."
*See id.* at 355.

In reversing the state supreme court, the Supreme Court held that "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law," and that "[i]f a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, it must not be given retroactive effect." *Id.* at 353-54 (internal quotation marks and citations omitted). Applying these principles in *Bouie*, the Supreme Court stated that, while the terms of the statute prohibited unwarranted entry, "[t]here was nothing in the statute to indicate that it also prohibited the different act of remaining on the premises after being asked to leave." *Id.* at 355. Thus, the Court concluded that "[t]he crime for which these petitioners stand convicted was 'not enumerated in the statute' at the time of their conduct. It follows that they have been deprived of liberty and property without due process of law in contravention of the Fourteenth Amendment." *Id.* at 363.

Lisa's argument under *Bouie* is without merit. In that case, the Supreme Court noted that the defendants did not have clear warning that their conduct was prohibited by law because the state court's interpretation of the statute was at odds with the plain meaning of the statute and prior cases interpreting the statute. *Id.* at 361-63. Here, however, the appellate court reasonably concluded that the trial court's interpretation of the statute was based on the plain meaning of the statute. Direct Appeal Op. at 19. Accordingly, Lisa is not entitled to relief on her *Bouie* claim.

Second, Lisa argues that she should have been able to present her consent defense by arguing that the kidnapping had ended in California before Rebbeca was killed six weeks after

22

the initial taking.  She argues that because the trial court ruled that Washington law governed

whether a kidnapping was still in progress on the day Rebbeca was killed in California, the trial

court's ruling and instructions did not allow her to bring her consent defense or argue that the

kidnapping had ended under California law.  She therefore claims that the court's rulings

prevented her from presenting a complete defense in violation of her Sixth Amendment right to a

trial by jury, as recognized by the Supreme Court in *Crane v. Kentucky*, 476 U.S. 683, 690

(1986).

It is well-settled that a criminal defendant has a constitutional right to present a defense.

*Crane,* 476 U.S. at 690.  This right is not, however, unfettered or without limitation.  "[S]tate and

federal rulemakers have broad latitude under the Constitution to establish rules excluding

evidence from criminal trials."  *United States v. Scheffer,* 523 U.S. 303, 308 (1998); *see Crane,*

476 U.S. at 689-690; *Marshall v. Lonberger,* 459 U.S. 422, 438, n.6, (1983); *Chambers v.

Mississippi,* 410 U.S. 284, 302-303 (1973); *Spencer v. Texas,* 385 U.S. 554, 564 (1967).

Here, as previously discussed, the state trial and appellate courts reasonably determined

that Lisa did not have the right under state law to present a consent defense to kidnapping.  "[A]

defendant is entitled to an instruction as to any recognized defense for which there exists

evidence sufficient for a reasonable jury to find in his favor."  *Mathews v. United States*, 485

U.S. 58, 63 (1988).  But a state court does not violate the Sixth Amendment right to present a

complete defense if the right to present that defense never existed in the first place.  *See United

States v. Komisaruk*, 885 F.2d 490, 496 (9th Cir. 1989) (rejecting argument under *Crane* that

exclusion of evidence violated right to complete defense because excluded evidence contained

defenses not legally cognizable in this circuit).  Accordingly, Lisa is not entitled to relief under

*Crane v. Kentucky* either.

      B.    *Claim 4: The California Court of Appeal violated Lisa's due process rights and*
*her right to a trial by jury by affirming her felony-murder conviction on the*
*alternative ground that, even under California law, Rebbeca did not have the*
*capacity to consent to the taking.*

      In rejecting Lisa's argument that the trial court should have submitted consent

instructions to the jury to allow her to argue that her child consented under California law, the

appellate court concluded that "Lisa would not have had a consent defense under the law of

California and the facts before us."  Direct Appeal Op. at 20.  It explained that "Lisa would have

us conclude that a jury should have had the opportunity to find she did not forcibly take Rebbeca

despite the fact that in violation of a Washington court order prohibiting her from having any

contact with her daughter, she and James jumped out of their car holding guns and instructed

Rebbeca to get in the vehicle."  *Id.*  The court added:

> In Lisa's view, her nine-year-old daughter's preference to live with her translated
> into an implied consent to live on the run, chased by the FBI and moving from
> campground to campground across the country.  Following this logic, the child's
> love of her mother transcended any fear or force involved in the initial taking and,
> at a minimum, had dissipated by the time they crossed into California and settled
> into the campground by Lake Tahoe.
> . . . [W]e do not agree that under the facts presented here she was entitled to an
> instruction suggesting that Rebbeca's consent vitiated the requisite force to sustain
> a kidnapping.

*Id.* at 20-21.

      As the court explained, the California Supreme Court has held that "the amount of force

required to kidnap an unresisting infant or child is simply the amount of physical force required

to take and carry the child away a substantial distance for an illegal purpose or with an illegal

24

intent." *Id.* at 21 (citing *In re Michele D.*, 59 P.3d 164 (Cal. 2002)).  Thus, the court concluded

that the "force element of kidnapping is satisfied when a child cannot consent so long as the

perpetrator takes the child for an illegal purpose or with an illegal intent." *Id.* at 22 (citing

*People v. Oliver*, 361 P.2d 593 (1961)).  The court also pointed to another case, *Parnell v.*

*Superior Court*, 173 Cal. Rptr. 906, 912 n.3 (Cal. Ct. App. 1981), in which the court found ample

force to satisfy the "forcible taking" element of section 207(d) where two strangers tricked a

seven-year-old boy into getting into their car.  Direct Appeal Op. at 22.  In that case, the court

stated in dicta that the child's "near passive conduct should not be construed as consent; rather, it

more logically evidences the inability of a minor to give a knowing consent." *Id.* (citation

omitted).

The appellate court explained that "[s]uch passive conduct is precisely what Lisa

construes as her nine-year-old daughter's knowing consent.  Or, at least she believes the jury

could, and should, have been allowed to construe her conduct as a knowing consent." *Id.*  The

court concluded:

> While, unlike Washington, California has not set a precise chronological cutoff
> for the age at which a child can consent to what otherwise would constitute a
> forcible taking, we have no doubt that nine-year-old Rebbeca, instructed by her
> mother and her mother's boyfriend at gunpoint to get into the car, was not capable
> of knowingly consenting to the taking. . . . Accepting the Supreme Court's
> formulation of the standard for proving force involving children, we hold that Lisa
> could not avoid a kidnapping conviction even if Rebbeca acquiesced in the taking
> because Lisa's unlawful intent sufficed as a matter of law.  Thus, Lisa had no
> consent defense under either Washington or California law.

*Id.* at 22-23 (footnote omitted).

This claim fails for the same reasons that claim three fails.  The essence of Lisa's argument

is that the court's interpretation of the facts in light of California state law is incorrect, but again, we

25

are bound by the court's application and interpretation of California state law. *See Bradshaw*, 546

U.S. at 76. A petitioner may not transform a state-law issue into a federal one by simply asserting

a violation of due process. *See Langford v. Day*, 110 F.3d 1380, 1388-89 (9th Cir. 1996). In light

of the evidence in the record, the court's determination that Lisa had no consent defense under

California law is reasonable and not contrary to federal law. Accordingly, Lisa is not entitled to

relief under this claim either.

3.      *Evidentiary Error Claims* (claims 6, 9)

Lisa further brings two claims that assert evidentiary error. "When reviewing the effect

of an erroneous evidentiary ruling, we begin with a presumption of prejudice. 'That presumption

can be rebutted by a showing that it is more probable than not that the jury would have reached

the same verdict even if the evidence had [not] been admitted.'" *Jules Jordan Video, Inc. v.

144942 Canada Inc.*, 617 F.3d 1146, 1159 (9th Cir. 2010) (quoting *Obrey v. Johnson*, 400 F.3d

691, 701 (9th Cir. 2005)). To warrant reversal of a jury verdict on the basis of evidentiary error,

the trial court's error must have "more probably than not . . . tainted the verdict." *United States

v. 4.85 Acres of Land, More or Less, Situated in Lincoln Cnty.*, 546 F.3d 613, 617 (9th Cir.

2008).

A.      *Claim 6: Admission of Washington pleading charging Platz with second-degree kidnapping.*

In her sixth claim, Lisa argues that admission of the Washington pleading "was

tantamount to directing the jury to find felony-murder based on a violation of [WASH. REV. CODE

ANN. §] 9A.40.030."

The trial court admitted a copy of the information filed by the prosecuting attorney in Washington charging her with second-degree kidnapping for the allegedly nonhearsay purpose of rebutting Lisa's claim that her conduct only amounted to custodial interference.  Direct Appeal Op. at 36.  The appellate court agreed with Lisa that "the information is both classic hearsay and improper opinion evidence."  *Id.*

The appellate court nonetheless concluded that the trial court's evidentiary error was harmless beyond a reasonable doubt.  *Id.* at 37.  The appellate court reasoned:

> The evidence of a kidnapping was overwhelming, and thus, the admission of the Washington information, although improper, did not contribute to the conviction.  When confronted with evidence of the armed and forceful taking of the child, the jury had no choice but to find Lisa guilty of kidnapping.  The information was mere window dressing to the compelling evidence of guilt of the underlying felony, a finding that necessarily led to the murder conviction.

*Id*.

"[A] federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable."  *See Fry v. Pliler*, 551 U.S. 112, 119 (2007).  Given the amount of evidence in the record on the kidnapping, the court's determination that the admission of the Washington pleading was harmless error is not unreasonable.  *See Ponce v. Felker*, 606 F.3d 596, 606 (9th Cir. 2010) (on habeas review, determining that where there was "weighty evidence against Petitioner independent of" the erroneously-admitted statements, "it was not unreasonable for the state courts to determine that the additional testimony . . . did not have a 'substantial and injurious effect or influence in determining the jury's verdict'" (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)))*.*  Lisa's claim for relief on the basis of the admission of the Washington pleading therefore fails.

B. *Claim 9: Alleged false testimony that Lisa was not allowed to impeach.*

In her ninth claim, Lisa alleges that the admission of false testimony of a detective, who defense counsel was not allowed to impeach, was "fundamentally unfair and a deprivation of due process."

The detective, who was present in the emergency room where Rebbeca was brought, testified that Lisa did not make any statements about her daughter, express emotion, or ask about her condition. Direct Appeal Op. at 33. Defense counsel requested the opportunity to impeach the detective with Lisa's statement to him that James had killed her daughter, but that request was denied. *Id.* The Attorney General subsequently conceded that the denial constituted evidentiary error. *Id.*

On review, the appellate court determined that Lisa's inability to impeach the police officer was harmless beyond a reasonable doubt. *Id.* at 35. The court stated that, because it had already determined that Rebbeca did not have capacity to consent when she was abducted at gunpoint, Lisa's involvement in the kidnapping was, on its own, sufficient to establish liability for Rebbeca's death. *Id.* Consequently, because the police officer's testimony had no bearing on whether Rebbeca had been kidnapped, the appellate court concluded that the admission of the testimony was harmless error. *Id.*

This evidentiary claim fails because, again, the court's harmlessness determination is reasonable. *See Fry*, 551 U.S. at 119; *see also United States v. Brobst*, 558 F.3d 982, 996-97 (9th Cir. 2009) (holding that failure to suppress statement obtained in violation of *Miranda* was harmless error where defendant's "convictions were based upon more than his 'in custody'

statement"); *Boyd v. City & Cnty. of San Francisco*, 576 F.3d 938, 949 (9th Cir. 2009) (determining that district court's evidentiary error was not prejudicial because it was more probable than not that the jury would have found for the defendants even without the admission). While the testimony might have been harmful with respect to intentional murder, Lisa was ultimately acquitted of that charge. We agree with the appellate court's determination that the testimony had no bearing on the kidnapping charge and thus was harmless error with respect to the felony murder conviction. Accordingly, Lisa is not entitled to relief under claim nine.

4.      *Jury Claims* (claims 7, 8)

Finally, Lisa asserts two claims that allege error with regards to the jury.

A.      *Claim 7: Misleading instructions.*

In claim seven, Lisa argues that the three instructions given to the jury on the felony murder special circumstance were "conflicting and self-canceling." Lisa contends that, pursuant to California Jury Instructions - Criminal No. 8.80.1, the trial court properly instructed the jury that, before they could find the felony-murder special circumstance to be true, they had to find that Lisa actually killed Rebbeca, aided and abetted Rebbeca's killing while intending to kill, or aided and abetted Rebbeca's kidnapping with a reckless indifference for human life and as a major participant. *See* CALJIC 8.80.1 (2012); Direct Appeal Op. at 31. Lisa argues, however, that two other jury instructions did not contain the intent to kill requirement.

Lisa further asserts that the prosecutor exacerbated the confusion during closing argument when, in discussing the special circumstance, he omitted the requisite intent to kill and reckless indifference to human life. Lisa argued before the appellate court, and continues to argue here,

that "it is reasonably possible that a juror could have entertained a reasonable doubt whether she acted with subjective awareness of the grave risk to her daughter's life." *Id.* at 32.

While the appellate court agreed that a juror could have entertained such a doubt, it nonetheless rejected her claim after it determined there was no instructional error. *Id.* at 33. It reasoned:

> Here, the jury was properly instructed on the alternative findings needed to sustain the special circumstance allegation. The instructions did not cancel each other simply because each one was not a self-contained exposition on the required elements. Because the instructions, when taken as a whole, properly included the findings required by section 190.2, subdivisions (a) and (d), there was no instructional error. The prosecutor's argument did not create instructional error or poison the jury's understanding of the law.

*Id.* at 32-33.

We agree with the appellate court that no instructional error occurred here. As the appellate court noted, "we must presume that the jury 'meticulously followed the instructions given.'" *Id.* at 32 (quoting *People v. Cruz*, 113 Cal. Rptr. 2d 86, 93 Cal. App. 4th 69, 73 (Cal. Ct. App. 2001)); *see also Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."). Nothing in the record indicates that the jury here failed to do so. Moreover, Lisa fails to demonstrate that the verdict would have been different had the requirement been explicitly included in all three instructions. *See Ybarra v. McDaniel*, 656 F.3d 984, 996 (9th Cir. 2011) (finding "fair assurance" that if, as petitioner argued, jurors had been instructed on the narrowed version of the aggravating factor, the jury nonetheless would have found the aggravating factor to apply). Indeed, even if the California Court of Appeals erred in its harmless error ruling, which we do not hold, Lisa would stand convicted on an instruction that

30

was erroneous under California state law, which is not cognizable on federal habeas corpus review.  *See Gilmore v. Taylor*, 508 U.S. 333, 344 (1993); *Byrd v. Lewis*, 566 F.3d 855, 861-62 (9th Cir. 2009) (stating that requirement that federal courts on habeas review defer to state court decisions on state law "applies with even greater force when a state court is analyzing a jury instruction developed under state law").  Accordingly, Lisa's instructional error claim fails.

B.      *Claim 8: Faulty voir dire questioning.*

In her eighth claim, Lisa argues that the questioning of two individuals with inside information on the case in the presence of the twelve venirepersons who made up the final jury was constitutional error that requires reversal.  The two individuals were subsequently excused from serving on the jury, but Lisa argued before the appellate court that "the entire venire was poisoned by the information elicited during the interrogation and particularly the impression conveyed that these women had inside information that would not be disclosed at trial and both believed Lisa was guilty."  Direct Appeal Op. at 38.

The court agreed that, because the individuals had disclosed their roles in the events on questionnaires before questioning occurred, the trial court should have exercised its discretion to conduct a private voir dire of the two potential jurors.  *Id.* at 38-39.  The court disagreed, however, that the questioning tainted the jury.  *Id.* at 39.

The court distinguished this case from *Mach v. Stewart*, 137 F.3d 630, 633 (9th Cir. 1997), in which the Ninth Circuit determined on habeas review that the open questioning of a social worker who repeatedly expressed her professional opinion in front of the other jury members violated the defendant's right to an impartial jury.  *Id.*  Unlike in *Mach*, the potential

31

jury members in this case did not express an expert opinion and, indeed, expressed no opinion at all.  *Id.*  The court further concluded that one individual's statement that she could not be impartial – the most prejudicial statement made by the excluded jurors in the presence of the panel – was "far different from the professional opinion offered on a dispositive issue in *Mach*." *Id.* at 39-40.  Noting that, "as a general matter, it is unlikely that errors or misconduct occurring during voir dire questioning will unduly influence the jury's verdict in the case," the appellate court ultimately concluded that the error was insufficient to warrant reversal.  *Id.* at 38 (quoting *People v. Medina*, 47 Cal. Rptr. 2d 165, 11 Cal. 4th 694, 741 (Cal. 1995)).

The court's determination that the open questioning of the veniremen was harmless error is reasonable and in line with this circuit's precedent.  *See, e.g.*, *Mach*, 137 F.3d at 633; *Thompson v. Borg*, 74 F.3d 1571, 1573-74 (9th Cir. 1996) (rejecting petitioner's claim on habeas review that venireman's remark that petitioner "pleaded guilty at one time and changed it" amounted to jury misconduct or extraneous information warranting reversal).  Lisa's claim therefore fails.

## V. CONCLUSION AND ORDER

The thrust of Lisa's petition is an attack on the rigidity of the felony-murder rule, which she argues can "send loving mothers innocent of murder to prison for life without the possibility of parole."  Indeed, the U.S. Supreme Court's recent decision in *Miller v. Alabama*, 132 S. Ct. 2455, 2463 (2012), lends some support for Lisa's argument that laws such as the statute at issue here, which require a minimum sentence of life without the possibility of parole, are unfair.  Of course *Miller's* holding that mandatory life imprisonment without parole violates the Eighth

Amendment's prohibition on cruel and unusual punishment is expressly limited to juvenile offenders, and the Court reaffirmed "that a sentencing rule permissible for adults may not be so for children." *Id.* at 2470.

As the California Court of Appeal recognized, "while one might reasonably argue about the wisdom of prosecuting petitioner for first degree murder under the circumstances of this case, the fact remains the death occurred during the course of a kidnapping that petitioner voluntarily committed." Habeas Op. at 29.  Because Lisa had no viable defenses to the underlying kidnapping offense and the trial court committed no reversible error, Lisa is liable for Rebbeca's death.

**IT IS THEREFORE ORDERED THAT** the Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 325, 327 (2003))).

The Clerk of the Court is to enter judgment accordingly.

Dated:  July 25, 2013.

/s/James K. Singleton
James K. Singleton
United States District Judge

33